[Cite as *State v. Fugate*, 2014-Ohio-415.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                      :

    Plaintiff-Appellee                      :                 C.A. CASE NO.     25782

v.                                                          :                 T.C. NO.     2012 CR 2375

GLEN E. FUGATE                              :                 (Criminal appeal from
                                            Common Pleas Court)

    Defendant-Appellant                    :

                                                                  :

. . . . . . . . . .

## O P I N I O N

Rendered on the     7th     day of      February     , 2014.

. . . . . . . . . .

APRIL F. CAMPBELL, Atty. Reg. No. 0089541, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

JOHN S. PINARD, Atty. Reg. No. 0085567, 120 W. Second Street, Suite 603, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

    **{¶ 1}**    Defendant-appellant Glen E. Fugate appeals his conviction and sentence for

one count of forgery (uttering), R.C. 2913.31(A)(3), a felony of the fifth degree. Fugate filed a timely notice of appeal with this Court on June 4, 2013.

{¶ 2} The instant appeal revolves around a parcel of property located at 30 S. Iona Street in the Drexel neighborhood of Jefferson Township, Ohio. Shortly before July of 2011, Kevin Ney, a zoning administrator for Jefferson Twp., received a call regarding the dilapidated condition of the house at 30 S. Iona Street. Ney testified that his duties as a zoning administrator included being responsible for nuisance abatement. Ney further testified that he had received prior complaints about the condition of the house. Moreover, from his position as a volunteer fire fighter, Ney was aware that numerous fires had occurred at the house.

{¶ 3} After beginning the nuisance abatement process for the house located at 30 S. Iona Street, Ney determined that the current owner of the property was a man named Billy Ray Combs. Ney testified that he never came into contact with Combs, and it was clear that he no longer resided at the house. Ney posted nuisance abatement notices on the house in July, 2011, and August, 2011. Ney's goal was to demolish the house.

{¶ 4} After posting the second demolition notice, Fugate contacted Ney and expressed his desire to take possession of the property and repair the house. Ney testified that he informed Fugate that he had no legal right to the property. Fugate testified that he was trying to contact Combs in order to purchase the property. Ney informed Fugate that he would need to speak with Combs before stopping the abatement process. Ney also told Fugate that the abatement process would be stopped if he was provided a document which transferred ownership of the property from Combs to Fugate. In a later conversation,

Fugate informed Ney that he had spoken to Combs, and that he was going to assume ownership and control over the property. Ney informed Fugate that he would still need to see a document executed by Combs which transferred title to Fugate before the abatement process would cease.

{¶ 5} Ney eventually learned that Combs had moved to Kentucky, but still had no contact with him. Ney continued the abatement process, and in December of 2011, a legal notice of intent to demolish was posted on the property. Shortly after the notice to demolish was posted, Ney received a handwritten quitclaim deed purporting to transfer ownership of the property at 30 S. Iona Street from Combs to Fugate. The deed contained the signatures of both Combs and Fugate and was filed at the recorder's office on December 29, 2011. As a result, all planned demolition of the property was halted.

{¶ 6} Ney contacted Detective Brian Conley from the Montgomery County Sheriff's Office regarding the deed. Det. Conley then contacted Fugate about the deed. Fugate agreed to come to the Sheriff's Office and speak with Det. Conley. Det. Conley attempted to contact Combs, but discovered that he had passed away in February of 2012. Ultimately, Fugate admitted to signing Combs' name to the quitclaim deed and filing the document at the recorder's office. Fugate explained that he simply wanted to own the property and did not want the house to be demolished.

{¶ 7} Fugate was subsequently indicted on September 26, 2012, for one count of forgery (uttering). At his arraignment on October 11, 2012, Fugate stood mute, and the trial court entered a plea of not guilty on his behalf. After a one-day bench trial held on April 5, 2013, the trial court found Fugate guilty of the charged offense and sentenced him to five

years of community control.

{¶ 8} It is from this judgment that Fugate now appeals.

{¶ 9} Fugate's first assignment of error is as follows:

{¶ 10} "APPELLANT WAS DENIED HIS RIGHT TO A FAIR TRIAL AS HE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL."

{¶ 11} In his first assignment, Fugate contends that his trial counsel was ineffective for failing to call any witnesses to testify on his behalf regarding the authenticity of the quitclaim deed. Specifically, Fugate argues that he was authorized by Combs to draw up and sign the deed on his behalf, and his counsel was deficient for failing to call any witnesses who would purportedly testify regarding the legality of their agreement.

{¶ 12} "We review the alleged instances of ineffective assistance of trial counsel under the two prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Supreme Court of Ohio in *State v. Bradley* (1989), 42 Ohio St.3d 136, * * * . Pursuant to those cases, trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 688. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. *Id.* Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel." (Internal

citation omitted). *State v. Mitchell*, 2d Dist. Montgomery No. 21957, 2008-Ohio-493, ¶ 31.

{¶ 13} An appellant is not deprived of effective assistance of counsel when counsel chooses, for strategic reasons, not to pursue every possible trial tactic. *State v. Brown*, 38 Ohio St.3d 305, 319, 528 N.E.2d 523 (1988). The test for a claim of ineffective assistance of counsel is not whether counsel pursued every possible defense; the test is whether the defense chosen was objectively reasonable. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A reviewing court may not second-guess decisions of counsel which can be considered matters of trial strategy. *State v. Smith*, 17 Ohio St.3d 98, 477 N.E.2d 1128 (1985). Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy had been available. *State v. Cook*, 65 Ohio St.3d 516, 524, 605 N.E.2d 70 (1992).

{¶ 14} At trial, Fugate's defense to the forgery charge was that he was authorized by Combs to draft and sign the deed to the 30 S. Iona Street property on his behalf. Fugate asserts that his trial counsel was ineffective for failing to call witnesses who could offer testimony that the quitclaim deed was authorized by Combs and, therefore, a legal contract. Fugate, however, fails to identify any witnesses that his trial counsel should have called. We note Fugate named three people on the witness list he filed prior to trial. Of the three, trial counsel called only Fugate to testify on his own behalf. In his brief, Fugate offers no explanation regarding what the testimony of the other two witnesses would have been, nor does he demonstrate that any other witnesses were available whose testimony would have established that Combs had agreed to transfer the property to Fugate. The only other party to the purported land transfer agreement was Combs, who died prior to the trial and was

obviously unavailable to testify. Furthermore, Fugate had confessed to the offense, and his trial testimony was inconsistent with his admission.

{¶ 15} "Generally, counsel's decision whether to call a witness falls within the rubric of trial strategy and will not be second-guessed by a reviewing court." *State v. Were*, 118 Ohio St.3d 448, 484, 2008-Ohio-7762, 890 N.E.2d 263, quoting *State v. Treesh*, 90 Ohio St.3d 460, 490, 739 N.E.2d 749 (2001). Moreover, "'attorneys need not pursue every conceivable avenue; they are entitled to be selective.'" *State v. Murphy*, 91 Ohio St.3d 516, 542, 747 N.E.2d 765 (2001), quoting *U.S. v. Davenport*, 986 F.2d 1047, 1049 (C.A.7, 1983). Based on the present record and his inability to identify any additional witnesses who could offer exculpatory testimony, Fugate's argument is merely speculative at best. Accordingly, trial counsel's decision to not call any witnesses other than Fugate himself was a tactical decision and therefore, did not constitute ineffective assistance.

{¶ 16} Fugate's first assignment of error is overruled.

{¶ 17} Fugate's second and final assignment of error is as follows:

{¶ 18} "THE TRIAL COURT ERRED IN FINDING APPELLANT GUILTY AS THE COURT LACKED SUFFICIENT EVIDENCE TO SUPPORT SUCH A FINDING."

{¶ 19} In his final assignment, Fugate argues that the evidence adduced during trial was insufficient to convict him of forgery. Specifically, Fugate asserts that the State presented no evidence that he acted knowingly with the purpose to defraud the County when he signed Combs' name to the quitclaim deed.

{¶ 20} Initially, we note that the State argues that Fugate has waived all but plain error regarding his sufficiency argument because he failed to make a Crim. R. 29 motion for

acquittal after the State rested its case and/or after the defense rested its case. In *State v. Hibbler*, 2d Dist. Clark No. 2001-CA-43, 2002-Ohio-4464, _23, we cited *State v. Roe*, 41 Ohio St.3d 18, 535 N.E.2d 1351 (1989) and *State v. Knapp*, 2d Dist. Montgomery No. 18457, 2001 WL 62519 (Jan. 26, 2001) for the general rule that when a criminal defendant fails to make a Crim.R. 29 motion, the ability to challenge the sufficiency on appeal is waived. However, we did recognize that an appellate court may conduct a plain error review even absent a Rule 29 motion at trial. Id. Plain error does not exist unless, but for the error, the outcome of the trial would have been different. *State v. Moreland*, 50 Ohio St.3d 58, 552 N.E.2d 894 (1990). Thus, we review the instant assignment for plain error.

{¶ 21} When a defendant challenges the sufficiency of the evidence, he is arguing that the State presented inadequate evidence on an element of the offense to sustain the verdict as a matter of law. *State v. Hawn*, 138 Ohio App.3d 449, 471, 741 N.E.2d 594 (2d Dist.2000). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 22} With the foregoing standards in mind, we find legally sufficient evidence to convict Fugate under R.C. 2913.31(A)(3), which states:

> (A) No person, with purpose to defraud, or knowing that the person is

facilitating a fraud, shall do any of the following:

\*\*\*

(3) Utter, or possess with purpose to utter, any writing that the person knows to have been forged.

**{¶ 23}** The element of forgery which Fugate claims the prosecution failed to establish was that he acted with purpose or knowledge to defraud. " 'Defraud' means to knowingly obtain, by deception, some benefit for oneself or another, or to knowingly cause, by deception, some detriment to another." R.C. 2913.01(B). The benefit must be one to which the person receiving the benefit is not otherwise entitled. See *State v. Hughley*, 8th Dist. Cuyahoga No. 82051, 2004-Ohio-132, ¶ 13-14.

**{¶ 24}** "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A).

**{¶ 25}** " 'It is a fundamental principle that a person is presumed to intend the natural, reasonable and probable consequences of his voluntary acts.' " *State v. Lott*, 51 Ohio St.3d 160, 168, 555 N.E.2d 293 (1990), quoting *State v. Johnson*, 56 Ohio St.2d 35, 39, 381 N.E.2d 637 (1978). (Other citation omitted.) " 'The intent of an accused person dwells in his mind. Not being ascertainable by the exercise of any or all of the senses, it can never be proved by the direct testimony of a third person, and it need not be. It must be gathered from the surrounding facts and circumstances under proper instructions from the

court.' " *Johnson* at 38, quoting *State v. Huffman,* 131 Ohio St. 27, 1 N.E.2d 313 (1936), paragraph four of the syllabus.

{¶ 26}  In the instant case, the evidence adduced during trial established that Fugate was aware that he had no legal right to the property located at 30 S. Iona Street because Ney informed him of that fact.  Fugate was aware that Combs was the owner of the property because he continually told Ney that he was trying to contact Combs about purchasing it.  Fugate also knew that he would be unable to halt the demolition of the house unless he had a document from Combs evincing a transfer of ownership.  Fugate admitted at trial that in order to halt the demolition and take ownership of the property, he signed Combs' name to a handwritten quitclaim deed which he then filed at the recorder's office.

{¶ 27}  At trial, Fugate asserted that the only reason he signed Combs' name to the fake deed was because of a verbal agreement that had been reached between he and Combs in conversations prior to 2009 when Fugate began a prison term for aggravated robbery.  Other than Fugate's testimony regarding the verbal agreement between he and Combs, no additional evidence was adduced to support the existence of such an agreement.  Also, as we noted earlier, the State introduced Fugate's confession to Det. Conley.  The evidence adduced during trial was sufficient to establish that by signing Combs' name to a fake deed and having it recorded, Fugate knowingly intended to defraud Combs and Montgomery County.

{¶ 28}   Based on the preceding discussion, we conclude that "'after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements'" of forgery proven beyond a reasonable doubt. *State v. Jenks,*

61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 29}  Fugate's second and final assignment of error is overruled.

{¶ 30}  All of Fugate's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

HALL, J. and WELBAUM, J., concur.

Copies mailed to:

April F. Campbell
John S. Pinard
Hon. Dennis J. Adkins